**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN RAYMOND LUCAS III, | |
| Plaintiff, | CIVIL ACTION NO. 1:25-CV-00344 |
| v. | (MEHALCHICK, J.) |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**MEMORANDUM**

Presently before the Court is a report and recommendation filed by Magistrate Judge Daryl F. Bloom ("the Report") recommending that the decision of the Commissioner of Social Security, (hereinafter, "the Commissioner") denying Plaintiff John Raymond Lucas III's ("Lucas") claims for disability insurance benefits ("DIB") and supplementary security income under Title II and Title XVI of the Social Security Act be affirmed. (Doc. 19). On December 9, 2025, Lucas filed a timely objection to the Report. (Doc. 20). Based on the Court's review of the relevant filings along with the Report, Lucas's objections (Doc. 20) are **OVERRULED**, and the Report (Doc. 19) will be **ADOPTED IN ITS ENTIRETY**.

## I.  LEGAL STANDARD

"A district court may 'designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition' of certain matters pending before the court." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (quoting 28 U.S.C. § 636(b)(1)(B)). Within fourteen days of being served a Report and Recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28

U.S.C. § 636(b)(1). When a party timely files objections, the district court is to conduct a *de novo* review of the challenged portions of the Magistrate Judge's findings unless the objection is "not timely or not specific." *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984); 28 U.S.C. § 636(b)(1). The Court may then "accept, reject, or modify, in whole or in part, the findings and recommendations." 28 U.S.C. § 636(b)(1). "Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." *Rahman v. Gartley*, No. CV 3:23-363, 2024 WL 555894, at *1 (M.D. Pa. Feb. 12, 2024) (citing *United v. Raddatz*, 447 U.S. 667, 676 (1980)).

## II. DISCUSSION

The necessary background for the purpose of the instant Order is as follows. Lucas applied for DIB and supplemental security insurance benefits on August 15, 2022, alleging he suffers from bipolar disorder and general anxiety disorder. (Doc. 11-6, at 18; Doc. 20, at 2). The Social Security Administration (the "SSA") denied Lucas's application for DIB and supplemental security insurance benefits on April 24, 2023, and denied Lucas's request upon reconsideration on August 31, 2023. (Doc. 11-4, at 3-4, 9-10, 13-14; Doc. 16, at 1).

Lucas requested an administrative hearing regarding the SSA's denial of his application for benefits, and on April 2, 2024, Administrative Law Judge Michelle Wolfe ("ALJ Wolfe") held a hearing regarding Lucas's DIB and supplemental security insurance benefit application. (Doc. 11-2, at 40-60; Doc. 11-4, at 18-19; Doc. 16, at 1). During the hearing, Lucas testified about his psychiatric treatment, the effects of his bipolar and anxiety disorders on his activities of daily living, his past work, suicidal ideation, sleeping difficulties, and frequent prolonged bathroom usage. (Doc. 11-2, at 46-56; Doc. 19, at 6-7). A vocational

expert also testified at the hearing, classifying Lucas's past work and answering hypothetical questions about an individual with Lucas's background and specific types of limitations. (Doc. 11-2, at 56-60; Doc. 19, at 7).

Following the hearing, on May 28, 2024, ALJ Wolfe issued a decision denying Lucas's application for benefits. (Doc. 11-2, at 23-34; Doc. 19, at 7). In her decision, ALJ Wolfe sequentially determined whether the Lucas: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). (Doc. 11-2, at 24-33); 20 C.F.R. § 404.1520(a)(4); § 416.920(a)(4). Between steps three and four of this sequential framework, ALJ Wolfe also determined the Lucas's RFC, which is defined as what an individual can still do despite the limitations caused by his or her impairment(s). (Doc. 19, at 16); 20 C.F.R. § 404.1545(a).

In the decision, ALJ Wolfe first concluded that Lucas meets the insured status requirement through March 31, 2027, and that he has not engaged in substantial gainful activity since the alleged onset date of July 10, 2021. (Doc. 11-2, at 25; Doc. 19, at 7). At the second step of the sequential analysis, ALJ Wolfe found that Lucas suffers from the severe impairments of bipolar disorder and generalized anxiety disorder. (Doc. 11-2, at 26; Doc. 19, at 7). At step three, ALJ Wolfe determined that Lucas does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. (Doc. 11-2, at 26; Doc. 19, at 7).

Between steps three and four, ALJ Wolfe concluded that Lucas retains the residual functional capacity ("RFC") to:

[P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple routine tasks, but no complex tasks, in low stress work environment defined as occasional decision making and occasional changes in work setting. He can have no fast-paced production work such as conveyor belt or quota-based work. Additionally, the claimant can have frequent interaction with supervisors, occasional interaction with coworkers but no team type setting work and no interaction with the public.

(Doc. 11-2, at 28; Doc. 19, at 8).

In making the RFC determination, ALJ Wolfe considered Lucas's reported, subjective symptoms, and found that "[Lucas's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Lucas's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Doc 11-2, at 29; Doc. 19, at 8). ALJ Wolfe then reviewed the medical record evidence she found supported her RFC determination. (Doc. 11-2, at 29-30; Doc. 19, at 9).

ALJ Wolfe was persuaded by the opinions of the state agency medical consultants, Drs. Shaw and Arnold, who each concluded that Lucas's physical impairments are not severe. (Doc. 11-2, at 31; Doc. 11-3, at 5-15; Doc. 19, at 9). ALJ Wolfe found the opinions of Drs. Shaw and Arnold to be supported by detailed explanations and consistent with Lucas's treatment records, which show that "aside from the claimant's [Crohn's] flares, objective findings are generally benign." (Doc. 11-2, at 31; Doc. 19, at 9). ALJ Wolfe was not persuaded by the opinion of consulting examiner, Dr. Konecke, who found that Lucas had some restrictions in his ability to lift, carry, sit, and stand, and that Lucas should never climb ladders, ropes, or scaffolds or be exposed to unprotected heights. (Doc. 11-2, at 31; Doc. 11-7, at 673-86; Doc. 19, at 9). ALJ Wolfe found that Dr. Konecke's opinion was not supported by Dr. Konecke's own examination findings and were inconsistent with the treatment records,

4

which "did not indicate [Lucas] had any issues with walking, sitting, etc." (Doc. 11-2, at 31-32; Doc. 19, at 10).

At the fourth step of the sequential analysis, ALJ Wolfe found that Lucas can perform his past work as a store laborer. (Doc. 11-2, at 32; Doc. 19, at 10). At step five, ALJ Wolfe found that Lucas can also perform other occupations with jobs that exist in significant numbers in the national economy. (Doc. 11-2, at 33; Doc. 19, at 10). Accordingly, ALJ Wolfe determined that Lucas is not disabled and does not meet the demanding showing necessary to sustain his claim for DIB and supplemental security insurance benefits. (Doc. 11-2, at 34).

Lucas initiated this action by filing a complaint on February 26, 2025. (Doc. 1). The complaint alleges that ALJ Wolfe erred in determining that Lucas is not disabled under the Social Security Act and the Commissioner erred in denying Lucas's application for DIB and supplemental security income benefits. (Doc. 1, ¶ 1). This case was assigned to the undersigned and referred to Magistrate Judge Daryl F. Bloom ("Judge Bloom"). On February 26, 2025, Lucas filed a motion for leave to proceed in *forma pauperis*, which Judge Bloom granted on February 27, 2025. (Doc. 2; Doc. 6). On August 18, 2025, Lucas filed a brief in support of his Social Security appeal, in which he argued that ALJ Wolfe erred by finding his Crohn's disease to be a non-severe impairment and by not properly incorporating the limitations resulting from this impairment when assessing the RFC. (Doc. 16, at 3-12). Judge Bloom reviewed ALJ Wolfe and the Commissioner's decisions and issued the Report recommending that the Court affirm the Commissioner's decision. (Doc. 19).

Judge Bloom reviewed ALJ Wolfe's five-step evaluation, which determined that Lucas does not have a severe physical or mental impairment that precludes him from engaging in his previous work or other substantial gainful work that exists in the national economy. (Doc.

5

19, at 14-18). As Judge Bloom includes in his Report, a district court's review of an ALJ's determination of a claimant's disability status and RFC is deferential, and the determination will not be set aside if it is supported by substantial evidence. (Doc. 19, at 18-19); *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002). Judge Bloom emphasized that, substantial evidence is not a high threshold, it "means only. . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (Doc. 19, 11-14); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Judge Bloom ultimately found that ALJ Wolfe's RFC determination for Lucas is supported by substantial evidence. (Doc. 19, at 18). After reviewing the relevant filings, the Court finds no error in Judge Bloom's conclusions. The Court finds Judge Bloom's analysis to be well-reasoned and supported by the applicable law. (Doc. 19).

Lucas objects to Judge Bloom's Report, arguing that Judge Bloom improperly rejected his arguments that ALJ Wolfe failed to consider the medically determinable impairment of Crohn's disease when crafting the RFC. (Doc. 20). Lucas also asserts that Judge Bloom erred in summarizing medical records that were not discussed in but were cited to in ALJ Wolfe's decision. (Doc. 20, at 4). The Court will address Lucas's objections in turn.

A. ALJ WOLFE PROPERLY CONSIDERED ALL EVIDENCE BEFORE HER IN MAKING THE RFC DETERMINATION.

First, Lucas argues that ALJ Wolfe improperly crafted the RFC by failing to consider Lucas's medically determinable impairment of Crohn's disease in her analysis. (Doc. 20). Lucas avers that ALJ Wolfe's RFC determination is inconsistent with her statement that "aside from [Lucas's][Crohn's] flares, objective findings are generally benign." (Doc. 20, at 1-2). Lucas reasons that these statements support a finding that his Crohn's flares are not benign and that these statements do not fully explain why there are not RFC limitations based on his Crohn's disease. (Doc. 20, at 2). Lucas further avers that a finding of severity for his

Crohn's disease is bolstered by the medical evidence in the record overall, and that such evidence was improperly left out of the RFC assessment. (Doc. 20, at 2). Lucas contends that ALJ Wolfe's rejection of Dr. Konecke's opinion is not supported by substantial evidence and is the product of error. (Doc. 20, at 3-4).

RFC is "that which an individual is still able to do despite the limitations caused by his or his impairment(s)." *Hartranft*, 181 F.3d at 359 n.1; 20 C.F.R. § 404.1545(a). An administrative law judge ("ALJ") bears the primary responsibility for assessing a claimant's RFC based on all evidence before them. *Burnett*, 220 F.3d at 121 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)). In determining a claimant's RFC, the ALJ must consider all the claimant's medically determinable impairments, including those not labeled severe at step two. *See E.M. v. Comm'r of Soc. Sec. Admin*, No. 20-20350, 2022 WL 970199, at *6 (D.N.J. Mar. 31, 2022) (finding an ALJ must consider non-severe impairments to adequately make the RFC assessment); *see also Brandt v. Kijakazi*, No. 3:22-cv-00197, 2023 WL 2578253, at *5 (M.D. Pa. Mar. 20, 2023) (finding an ALJ's RFC was not supported by substantial evidence because while they indicated non-severe impairments were considered in assessing the RFC, the ALJ made no discussion of the plaintiff's tendonitis or why plaintiff's complaints were not credible). In evaluating all the evidence before them, including evidence on non-severe impairments, an ALJ may weigh the credibility of the evidence, but they must give some indication of the evidence they reject and the reason(s) for discounting such evidence. *Burnett*, 220 F.3d at 121 (citing *Plummer*, 186 F.3d at 429; *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). As Judge Bloom points out, the Court is prohibited from re-weighing evidence and only looks toward the record to see if the ALJ's decision is supported by substantial evidence. (Doc. 19, at 22); *Zirnsak v. Colvin*, 777

7

F.3d 607, 610-11 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Substantial evidence is not a high threshold, it "means only. . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103.

Here, ALJ Wolfe considered clinical findings, level of treatment, activity level of claimant, and testimony of record. (Doc. 11-2, at 32). In addition to ALJ Wolfe's consideration of Lucas's mental impairments, ALJ Wolfe also considered Lucas's Chron's disease. (Doc. 11-2, at 31-32). First, Wolfe discussed Lucas' testimony on his mental and physical illnesses. (Doc. 11-2, at 29). Then, ALJ Wolfe considered and found persuasive Drs. Shaw and Arnold's opinions that Lucas's physical impairments are not severe, which were based on Lucas's treatment records and supported by detailed explanations. (Doc. 11-2, at 31). Next, ALJ Wolfe considered Dr. Konecke's consultative examination and opinions on Lucas's physical impairments. (Doc. 11-2, at 31). ALJ Wolfe weighed the credibility of, but ultimately discounted Dr. Konecke's opinion as unpersuasive reasoning that Dr. Konecke's opinion was unsupported by his own findings on examination and were inconsistent with Lucas's treatment records. (Doc. 11-2, at 31-32); *see Burnett*, 220 F.3d at 121 (citing *Plummer*, 186 F.3d at 429; *Cotter*, 642 F.2d at 705) (finding that an ALJ may weigh the credibility of the evidence, but they must give some indication of the evidence they reject and the reason(s) for discounting such evidence). ALJ Wolfe considered all relevant evidence before her, including evidence of Lucas's Chron's disease. *See Biestek*, 587 U.S. at 103 (holding substantial evidence "means only. . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *see Burnett*, 220 F.3d at 121 (citing *Plummer*, 186 F.3d at 429; *Doak*, 790 F.2d at 29) (determining an ALJ bears the primary responsibility for assessing a claimant's

8

RFC based on all evidence before them); *see also E.M. v. Comm'r of Soc. Sec. Admin*, 2022 WL 970199, at *6 (finding an ALJ must consider non-severe impairments to adequately make the RFC assessment). Accordingly, the Court affirms Judge Bloom's conclusion that substantial evidence supported ALJ Wolfe's evaluation of the case.[1] (Doc. 19, at 22-23).

   B. JUDGE BLOOM'S SUMMARY OF MEDICAL RECORDS DOES NOT AMOUNT TO POST-HOC REASONING.

Lucas next asserts that Judge Bloom erred in summarizing medical records that were not discussed in but were cited to in ALJ Wolfe's decision. (Doc. 20, at 4). Lucas contends that Judge Blooms summary of these records amounts to post-hoc reasoning because ALJ Wolfe did not discuss the specific records in the RFC determination. (Doc. 20, at 4).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize

---

[1] Lucas further contends that the ALJ Wolfe's finding that "aside from [Lucas's][Crohn's] flares, objective findings are generally benign" is inconsistent with her RFC finding. (Doc. 20, at 1-2). Lucas provides ALJ Wolfe's quotation out of context. ALJ Wolfe determined that Drs. Shaw and Arnolds opinions were persuasive in part because "they are consistent with the treatment records which show that aside from claimant's Chron's flares, objective findings are generally benign. There are no issues with gait, strength, sensation, breathing, etc." (Doc. 11-2, at 31). Later ALJ Wolfe determined that Dr. Konecke's findings are not persuasive in part because "it is not consistent with the treatment records which aside from the claimant's Chron's flairs [sic] were generally benign and did not indicate the claimant had any issues with walking, sitting, etc." (Doc. 11-2, at 31-32). ALJ Wolfe's statements on the generally benign findings are consistent with the RFC determination because they explain that even with Lucas's Crohn's flairs, the treatment record does not indicate Lucas has any issues with gait, strength, sensation, breathing, walking, or sitting. (Doc. 11-2, at 28; Doc. 11-2, at 31-32).

the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). While "the ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision," the court is not required "to read the ALJ's opinion in a vacuum." *Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012); *Knox v. Astrue,* No. Civ.A.09–1075, 2010 WL 1212561, at *7 (W.D.Pa. May 26, 2010). While ALJs must articulate how persuasive they find medical opinions in an applicant's case record, ALJs are not required to articulate how each medical opinion was considered individually. 20 C.F.R. § 404.1520c(b)(1); § 416.920c(b)(1).

In the background section of the Report, Judge Bloom includes a summary of medical records related to Lucas's Chron's disease. (Doc. 19, at 3-6). As Lucas's points out, Judge Bloom's summary includes medical records that ALJ Wolfe cited to but did not directly discuss in her decision. (Doc. 19, at 3-6; Doc. 20, at 4; Doc. 11-2, at 26). However, in the discussion section of the Report, Judge Bloom did not reweigh these medical records in his review of ALJ Wolfe's decision. *See Zirnsak,* 777 F.3d at 610-11 (citing *Rutherford*, 399 F.3d at 552 ("we are mindful that we must not substitute our own judgment for that of the fact finder"). Judge Bloom instead discussed the evidence ALJ Wolfe weighed in her decision to determine whether the decision was supported by substantial evidence. (Doc. 19, at 14-18); *see* 42 U.S.C. §405(g); *Johnson,* 529 F.3d at 200; *Ficca,* 901 F. Supp. 2d at 536. As explained in *supra* section II.A., the Court affirms Judge Bloom's conclusion that substantial evidence supported ALJ Wolfe's evaluation of the case. (Doc. 19, at 22-23). Therefore, Judge Blooms summary of medical records in the factual background of his report without re-weighing the

medical records does not amount to post-hoc reasoning.[2] *See Leslie*, 304 F. Supp. 2d at 627; *see Schuster*, 879 F. Supp. 2d at 466; *see also Knox*, 2010 WL 1212561, at *7.

### III. CONCLUSION

The Court agrees with the Report's sound reasoning and discerns no error of law. Accordingly, **IT IS HEREBY ORDERED THAT** the Report (Doc. 19) is **ADOPTED IN ITS ENTIRETY** as the opinion of the Court. The decision of the Commissioner is **AFFIRMED**, and the Clerk of Court is directed to enter judgment in the Commissioner's favor and **CLOSE** this case.

**Dated: February 27, 2026**                    *s/ Karoline Mehalchick*
                                                                          **KAROLINE MEHALCHICK**
                                                                          **United States District Judge**

---

[2] Lucas further objects to Judge Blooms contention that Lucas did not complain of Crohn's disease in his initial application for disability. (Doc. 20, at 4-5). Lucas asserts that he did state that he received ongoing treatment from Dr. Gordon solely for the condition of "[p]ossible [C]rohns and or [irritable bowel syndrome]" in his initial application for benefits. (Doc. 11-6, at 22; Doc. 20, at 5). Whether Lucas adequately alleged Crohn's disease as a disabling impairment before his appeal is immaterial because ALJ Wolfe considered all relevant evidence before her in making her RFC determination, including evidence of Lucas's Crohn's disease. (Doc. 11-2, at 31-32); *supra* section II.A; *see Biestek*, 587 U.S. at 103; *see Burnett*, 220 F.3d at 121 (citing *Plummer*, 186 F.3d at 429; *Doak*, 790 F.2d at 29); *see also E.M. v. Comm'r of Soc. Sec. Admin*, 2022 WL 970199, at *6.